MILLER *v.* PITTS, sheriff.

No. 10308. November 19, 1934.

*J. W. Dennard* and *C. L. Harris,* for plaintiff.

*W. H. Dorris* and *Mrs. J. H. McCormick Jr.,* for defendant.

BECK, P. J. Louis J. Miller, alleging that he had purchased the real estate and the building thereon and the equipment of the Cotton Bloom Ice Cream Company in Crisp County, filed a petition against J. H. Pitts as sheriff of Crisp County, praying for injunction against levy and enforcement of tax fi. fas. for county taxes against the Cotton Bloom Ice Cream Company, claiming that said corporation was exempt from taxation on the ground that the plant against which the sheriff was seeking the enforcement of fi. fas. was one of the industries which are exempt from taxation for a period of five years, under the provisions of an amendment to the constitution of this State, proposed in 1923 and adopted in 1924, authorizing the General Assembly to permit counties and municipalities approving the same to exempt from ad valorem taxes "any person, natural or artificial, a resident of this State, who may, after January 1st, 1924, build, equip, establish, or enlarge a plant for the manufacture or processing of cotton, wool, linen, silk, rubber, clay, wood, metal, metallic or non-metallic mineral or combination of same, creamery or cheese plant, . . for a period not exceeding five years." The sheriff filed his answer admitting certain of the allegations and denying others. Upon a hearing the court refused an injunction, and the plaintiff excepted.

Among the provisions of the charter of the Cotton Bloom Ice Cream Company is the following: "The particular business to be carried on is to be that of the manufacture, storage, preservation, distribution, and sale of ice cream, butter, cheese, and other similar products." It appears that the corporation purchased real estate located in Cordele, Crisp County, erected thereon a building, purchased and installed in the building expensive machinery and equipment for the purpose of processing and manufacturing cream into various products, such as ice cream, etc. In an agreed statement of facts it is stated: "From the time the plant began operations, that is, for the years 1929, 1930, and 1931, it bought, manufactured, and processed from 20,000 to 25,000 gallons of cream annually, and in 1932 and 1933 the business had dropped off to around 10,000 to 15,000 gallons of cream, due to the depression. The Cotton Bloom Ice Cream Company has from its beginning and is now engaged in the manufacturing and processing of cream, its business being substantially as follows: Sweet cream, sour cream, and milk are purchased from the local farmers and local dairymen in this territory, in its raw state. The cream is placed first in the pasteurizing vat where a test is made of the mixture for its acidity and butter-fat. A certain amount of it is then removed from the pasteurizer and run through a separator to bring it to a certain percentage of butter-fat suitable for marketing as sweet cream or for the churning or making into butter. It is then put back in a pasteurizer and pasteurized; that is, it is brought up to a certain maximum heat for the purpose of killing any and all bacteria that might be injurious to the health of persons consuming it either in the form of sweet cream or butter. From the pasteurizer it goes through a cooling system and the temperature reduced to at least 40 degrees Fahrenheit, where it is transferred to a cold-storage room. The product is then ready to be manufactured into ice cream or butter or sold as whipping cream or sweet cream. Any surplus of the product above the requirements for the local customers of the plant from time to time is shipped to various points in Georgia and Florida. . . The company's principal manufactured product is ice cream in its various forms."

We are of the opinion that from the character of the corporation, the purpose for which it was chartered, and from the statement of facts, especially that part which we have quoted above, the busi-

ness of the corporation fell within the provisions making exempt from county and municipal taxes for five years industries of the character there designated. The court should have enjoined the sheriff from selling the property in question under the tax execution referred to, it appearing that the plaintiff had tendered the taxes due the State.

*Judgment reversed. All the Justices concur.*